# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| JERMEAL WHITE,<br>    Plaintiff, | Case No. 1:19-cv-1009 |
| vs. | Barrett, J.<br>Litkovitz, M.J. |
| WARDEN R. ERDOS, et al.,<br>    Defendants. | **REPORT AND<br>RECOMMENDATION** |

Plaintiff, a prisoner at the Southern Ohio Correctional Facility (SOCF), filed this pro se civil rights complaint under 42 U.S.C. § 1983 alleging violations of his Eighth Amendment rights. Plaintiff was granted leave to proceed *in forma pauperis* on his Eighth Amendment claim alleging use of excessive force against Corrections Officer D. Stringer (C/O Stringer). (Docs. 8, 10). The matter is before the Court on plaintiff's motion for summary judgment (Doc. 19), defendant C/O Stringer's response in opposition to plaintiff's motion (Doc. 31), and plaintiff's reply (Doc. 35), and on defendant's cross-motion for summary judgment (Doc. 32) and plaintiff's opposing memorandum (Doc. 34).

**I. Summary judgment standard**

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v.*

*Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Id.*; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, "[f]acts that are not blatantly contradicted by [the evidence] remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011). "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

A fact is "material" if its resolution will affect the outcome of the lawsuit. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016), *aff'd,* No. 17-3088, 2017 WL 3726755 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 248). The party who seeks summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 322. To make its determination, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter the party's duty on a summary judgment motion to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp. 2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc*., 375 F. App'x 482, 485 (6th Cir. 2010)).

**II. Facts**

In support of his motion for summary judgment and in opposition to plaintiff's motion, defendant C/O Stringer has submitted his declaration (Docs. 31, 32, Exh. C) and declarations by corrections officers who witnessed the use of force incident: Lieutenant Dunlap, Thomas Adkins, Brinton Brown, and Chad McNutt (*Id*., Exhs. D, E, F, G). Defendant C/O Stringer has also

submitted copies of video recordings that capture the entire use of force incident.[1] (*Id*., Exh. A, SOCF video).

This lawsuit arises out of an incident that occurred at SOCF on August 9, 2019, which was captured in its entirety by SOCF security cameras. (Docs. 31, 32, Exh. A, SOCF video). On that date, plaintiff was walking down the corridor to the cafeteria at SOCF to eat. The video recordings show the entire incident beginning just seconds before plaintiff arrived at the first set of cafeteria doors where Stringer was standing and ending just after plaintiff was escorted to the restrictive housing unit and placed inside a cell. The video recordings and declarations submitted by defendant Stringer show that as plaintiff walked down the hallway toward the cafeteria, he approached C/O Stringer standing at a set of doors at the entrance to the cafeteria. (*Id*., Exh. A, SOCF CCW W-E 07-04:29-36; Exh. C, Stringer Decl., ¶ 3). Plaintiff started using racial slurs and showing disrespect toward defendant. (*Id*., Exh. C, Stringer Decl., ¶ 4; Exh. D, Dunlap Decl., ¶ 3; Exh. F, Brown Decl., ¶ 3). Plaintiff said to defendant, "fuck you house nigger." (*Id*., Exh. C, Stringer Decl., ¶ 4; Exh. F, Brown Decl., ¶ 3). Defendant ordered plaintiff to stop being disrespectful, but plaintiff stopped walking and continued to shout racial slurs at defendant. (*Id*., Exh. C, Stringer Decl., ¶ 6). As they spoke, C/O Stringer twice pointed back in the direction that plaintiff had come from. (*Id*., Exh. A, SOCF CCW W-E 07-04:38-41). Plaintiff began to walk away (*Id*., Exh. A, SOCF CCW W-E 07-04:39), yelling at C/O Stringer as he did that "I don't need to do anything house nigger." (*Id*., Exh. C, Stringer Decl., ¶ 6). C/O Stringer gave plaintiff multiple direct orders to put his hands on the wall so that he could be

---

[1] In addition, defendant relies on documents from the Use of Force Investigation. (Docs. 31, 32, Exh. B). The statements by plaintiff, defendant, and other employees which are part of the administrative record, including the Use of Force Report, and which have been offered as evidence on summary judgment are not sworn statements. However, the statements by defendant and other corrections officers in the Use of Force Report are consistent with the sworn statements in their declarations. The Court has relied on the sworn statements in their declarations in determining whether there is a genuine issue of material fact in this case.

handcuffed, but plaintiff refused to comply and ignored several such orders. (*Id*., ¶ 7; Exh. E, Adkins Decl., ¶ 4-5; Exh. F, Brown Decl., ¶ 5; Exh. G, McNutt Decl., ¶¶ 5-6). Plaintiff told Stringer to "put me on the wall bitch." (*Id*., Exh. D, Adkins Decl., ¶ 5). Plaintiff walked away past several corrections officers as defendant followed him. (*Id*., Exh. A, SOCF CCW W-E 07-04:39-40; Exh. D, Dunlap Decl., ¶ 5). Plaintiff continued to argue with C/O Stringer and to be disrespectful. (*Id*., Exh. D, Dunlap Decl., ¶ 5; Exh. F, Brown Decl., ¶ 5). Other corrections officers also followed plaintiff, and one of the other corrections officers pointed toward the wall as he spoke to plaintiff. (*Id*., Exh. A, SOCF CCW W-E 7-04:45-46). Plaintiff continued walking down the hallway. (*Id*., Exh. A, SOCF CCW W-E7-04:46-49). C/O Stringer then forcibly placed plaintiff against the wall to handcuff him. (*Id*., Exh. A, SOCF CCW W-E 7-04:46-50-51; Exh. C, Stringer Decl., ¶ 8; Exh. E, Adkins Decl., ¶ 6; Exh. F, Brown Decl., ¶ 6; Exh G, McNutt Decl., ¶ 6). Plaintiff was yelling racial slurs at C/O Stringer. (*Id*., Exh. E, Adkins Decl., ¶ 7). Two corrections officers who had followed plaintiff stood close by until plaintiff was handcuffed and then walked back to the first set of cafeteria doors. (*Id*., Exh. A, SOCF CCW W-E 7-04:46-49). Lieutenant Dunlap stood next to C/O Stringer as he handcuffed plaintiff. (*Id*.).

Plaintiff became aggressive and began to pull away as defendant placed handcuffs on him. (*Id*., Exh. C, Stringer Decl., ¶ 8). Because plaintiff was behaving aggressively, defendant began escorting plaintiff down the hall to restrictive housing using an escort technique. (*Id*., Exh. C, Stringer Decl., ¶ 9; Exh. A, SOCF CCW W-E 07-05:27; Exh. D, Dunlap Decl., ¶ 7). Lieutenant Dunlap followed. (*Id*., Exh. A, SOCF CCW W-E 07-05:28). Defendant pushed plaintiff back on the wall as plaintiff resisted and pulled away, and defendant gave plaintiff a direct order not to pull away and to comply with the escort. (*Id*., Exh. A, SOCF CCW W-E 07-05:36-38; Exh. C, Stringer Decl., ¶¶ 10-11; Exh. D, Dunlap Decl., ¶ 7). Dunlap then assisted

5

C/O Stringer with the escort technique, they both led plaintiff to the J-block without further incident while using the technique, and they placed plaintiff in a cell. (*Id*., Exh. A, SOCF CCW W-E 07-05:43-56; Exh. C, Stringer Decl., ¶ 12; Exh. D, Dunlap Decl., ¶ 8).

A Medical Exam Report completed on August 9, 2019, indicates that plaintiff was evaluated by a nurse following the use of force incident. (Docs. 31, 32, Exh. B at 14). The nurse made objective physical findings that plaintiff was healthy and had sustained no injuries. (*Id*.). The nurse found no treatment was indicated. (*Id*.).

Plaintiff relies solely on the allegations in his "verified" complaint to support his motion for summary judgment. (*See* Doc. 1). Plaintiff's "verified" complaint alleges that C/O Stringer called to plaintiff in the hallway and called plaintiff's name. Plaintiff stopped and C/O Stinger walked up to plaintiff, pointed his finger, and told plaintiff to walk back to the unit. Plaintiff told C/O Stringer that he "is allowed to eat" and continued walking to the second cafeteria. C/O Stringer followed plaintiff. As plaintiff was about to enter the second cafeteria, C/O Stringer told plaintiff to put both his hands on the wall. Plaintiff did as he was told. While his hands were on the wall, C/O Stringer "was playing tricky games of wich [sic] one of plaintiff's hands to cuff up" first. While plaintiff was cuffed up on the wall, C/O Stringer started punching plaintiff in his back. Plaintiff claims that although three other officers were nearby, only C/O Stringer "attended to [him] for no reason." Then, as plaintiff walked down the hallway to the "J2" housing unit, defendant C/O Stringer "smashed plaintiff to the wall with excessive [] force, and bent [his] left wrist so hard that [plaintiff] can't move it." Plaintiff claims he was "refused medical attention, and the camera prove [sic] it." (*Id*. at 4-5).

Plaintiff states that the allegations in his "verified" complaint "are true, except as to matters alleged on information and belief, and as to those I believe them to be true." (*Id*. at 9).

6

However, plaintiff's "verified" complaint does not distinguish between the statements he considers to be based on information and belief and those based on firsthand knowledge. (*Id*.). Therefore, plaintiff's verification statement does not comport with the requirement on summary judgment that a supporting affidavit or declaration be "made on personal knowledge." Fed. R. Civ. P. 56(c)(4). *See also Cobell v. Norton*, 310 F. Supp. 2d 77, 84-85 (D.D.C. 2004) (declining to consider as evidence on summary judgment a certification "based on nothing more than 'knowledge, information, and belief.'"). Thus, plaintiff's "verified" complaint does not constitute evidence showing there is a genuine issue of material fact for trial. *See Maston*, 832 F. Supp. 2d at 851-52 (holding that a pro se party cannot rely on allegations or denials in unsworn filings when opposing a motion for summary judgment).[2]

## III. The Eighth Amendment

Plaintiff's Eighth Amendment claim is brought under 42 U.S.C. § 1983, which prohibits any person "under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving a United States citizen "of any rights, privileges or immunities secured by the constitution and laws." To prevail on a § 1983 claim, a plaintiff must demonstrate "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

A convicted prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The "core judicial inquiry" whenever a prison official stands accused of using excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

---

[2] The Court need not address this issue further because the record shows there is no genuine dispute that defendant did not violate plaintiff's Eighth Amendment rights, and defendant is therefore entitled to summary judgment.

sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Eighth Amendment excessive force claims include both a subjective and an objective component. *Cordell v. McKinney*, 759 F.3d 573, 580-81 (6th Cir. 2014). The subjective component focuses on the prison official's state of mind, while the objective component analyzes whether the pain inflicted on the prisoner was "sufficiently serious." *Id.* at 580. In making this inquiry, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the responsible official; and the extent of the injury inflicted. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 320-321.

"While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell*, 759 F.3d at 580-81 (citing *Wilkins*, 559 U.S. at 37). "When prison officials maliciously and sadistically use force to cause harm . . ., contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins,* 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9). The absence of a serious injury is nonetheless relevant as a factor that suggests whether the use of force may "plausibly have been thought necessary" in a given situation. *Id*. (quoting *Hudson,* 503 U.S. at 7).

Corrections officers do not violate a prisoner's Eighth Amendment rights when they use force "in a good-faith effort to maintain or restore discipline." *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell,* 93 F. App'x 723, 725 (6th Cir. 2004))

8

(defendant corrections officers applied force - spraying the prisoner with pepper spray - in a "good faith effort to maintain or restore discipline, not to maliciously cause pain," where the prisoner repeatedly disobeyed the officers' direct orders to "sit cross-legged on his bunk and face the wall").

**IV. Plaintiff's Eighth Amendment claim against defendant C/O Stringer**

Based on the record presented, there are no disputed material facts and defendant is entitled to summary judgment on plaintiff's Eighth Amendment excessive force claim as a matter of law. The record establishes that C/O Stringer applied a measured amount of force to discipline plaintiff, a recalcitrant and disruptive prisoner, and restore order. There is no dispute that plaintiff disobeyed at least one direct order that C/O Stringer gave him. Plaintiff concedes that he did not comply with C/O Stringer's direct order to return to his unit as he was walking to the cafeteria. Plaintiff did not turn around to return to his unit but continued walking to the second cafeteria, telling C/O Stringer he was allowed to eat. (Doc. 1 at 4). The video recording shows a second corrections officer directing plaintiff to go against the wall after plaintiff failed to comply with C/O Stringer's order to return to his unit. (Docs. 31, 32, Exh. A, SOCF CCW W-E 07-04:46). Plaintiff also did not comply with that officer's order and continued walking toward the second cafeteria. (*Id*.). During this time, plaintiff was yelling racial slurs and being disrespectful toward C/O Stringer. (Docs. 31, 32, Exh. C, Stringer Decl., ¶¶ 4-6; Exh. D, Dunlap Decl., ¶¶ 3-5; Exh. E, Adkins Decl., ¶¶ 5-7; Exh. F, Brown Decl., ¶¶ 3-5). Using measured force to put plaintiff against the wall and handcuff him was a reasonable response to plaintiff's failure to comply with direct orders and to his continued yelling of racial slurs and show of disrespect toward C/O Stringer.

Further, C/O Stringer did not act unreasonably by forcing plaintiff against the opposite wall after he had been handcuffed and was being escorted to restrictive housing. The evidence shows that due to plaintiff's aggressive behavior, Stringer used an escort technique to take plaintiff to restrictive housing after he was handcuffed. (Docs. 31, 32, Exh. C, Stringer Decl., ¶ 9). Plaintiff began trying to pull away as he was handcuffed. (*Id.*, Exh. A, SOCF CCW W-E 07-05:38; Exh. C, Stringer Decl., ¶ 10; Exh. D, Dunlap Decl., ¶ 7). In response, C/O Stringer forced plaintiff onto the opposite wall and gave him a direct order not to pull away and to comply with the escort. (*Id.*, Exh. A, SOCF CCW W-E 07-05:38; Exh. C, Stringer Decl., ¶¶ 10-11). Dunlap then assisted defendant, and the two of them successfully transported plaintiff to the restrictive housing unit without further incident using an escort technique. (*Id.*, Exh. A, SOCF CCW W-E 07-05:45; Exh. C, Stringer Decl., ¶ 12; Exh. D, Dunlap Decl., ¶ 9). Forcing plaintiff onto the wall and using an escort technique was a reasonable response to plaintiff's attempts to pull away from C/O Stringer and resist his efforts to escort plaintiff to restrictive housing.

Plaintiff has not introduced any evidence to refute the video evidence and the declarations of defendant and other corrections officers showing that C/O Stringer's use of force was reasonable. Plaintiff simply challenges the veracity of the declarations, and he claims the video recordings will support his version of the use of force incident. But plaintiff offers only speculative and unsupported assertions to cast doubt on the veracity of the declarants' factual assertions, and the video recordings do not support plaintiff's version of events. Plaintiff alleges that the other corrections officers in close proximity would have responded to the situation if plaintiff was disrespectful or disruptive, and their alleged failure to do so shows that C/O Stringer used excessive force without justification. But the video recordings show that other corrections officers did respond and stayed with C/O Stringer until plaintiff was handcuffed;

10

another officer directed plaintiff to the wall; and Dunlap assisted C/O Stringer with the escort after plaintiff initially resisted. (Docs. 31, 32, Exh. A, SOCF CCW W-E 07-04:45-46). Further, even if no other officers had responded, plaintiff's attempt to draw a negative inference from their alleged inaction is based only on speculation, which is insufficient to create a genuine issue of fact. *See Nilles v. Givaudan Flavors Corp.*, 521 F. App'x 364, 371 (6th Cir. 2013) (quoting *Hedberg v. Indiana Bell Telephone Co.*, 47 F.3d 928, 932 (7th Cir. 1995)) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (emphasis in the original). *See also Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) ("[T]he party opposing [a properly supported motion for summary judgment] may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion.") (internal quotation marks omitted). Plaintiff has not introduced any other competent evidence to show that the use of force by C/O Stringer was unjustified.

Plaintiff also has not submitted any evidence to satisfy the objective component of his Eighth Amendment claim. "[N]ot every shove or restraint gives rise to a constitutional violation." *Cordell*, 759 F.3d at 580. *See also Moore v. Morgan*, No. 1:16-CV-655, 2020 WL 4915221, at *6 (S.D. Ohio Aug. 21, 2020). There is no evidence in the record to show that plaintiff suffered any injury or even experienced any pain as a result of defendant's use of force. Plaintiff alleges that the video recordings will show that C/O Stringer used excessive force by punching plaintiff in the back after he was handcuffed. (Doc. 19 at 2-3; *see* Doc. 1 at 5). Plaintiff also asserts that C/O Stringer bent his wrist back so far that he cannot move it. (Doc. 1 at 5). However, there is no indication on the video recordings that C/O Stringer punched plaintiff or bent his wrist back. Plaintiff does not appear to be in any pain as he is escorted down

11

the hall. Plaintiff does not even allege in the "verified" complaint that he experienced any pain or suffered any injury whatsoever to his back as a result of C/O Stringer's use of force. (*See* Doc. 1). Finally, the medical report prepared on the date of the injury is not consistent with plaintiff's claim. (Docs. 31, 32, Exh. B at 14). The report notes a physical objective finding of no injuries made by the examining nurse, and plaintiff was assessed as having sustained no injuries. (*Id*.). Plaintiff has not offered any competent evidence that casts doubt on the validity of the medical examination findings.

Plaintiff has not introduced affidavits or other evidence that refutes defendant's evidence and creates a genuine dispute as to any material fact. The unrefuted evidence establishes that C/O Stringer applied force in a good-faith effort to restore discipline rather than maliciously to cause pain. *See Jennings*, 93 F. App'x at 725. C/O Stringer's measured use of force in the face of plaintiff's refusal to follow direct orders, his disruptive and disrespectful behavior, and his resistance to efforts to escort him to restrictive housing did not violate plaintiff's Eighth Amendment rights. Defendant C/O Stringer is entitled to summary judgment on plaintiff's Eighth Amendment claim premised on the unreasonable use of force.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's motion for summary judgment (Doc. 19) be **DENIED**.

2. Defendant's motion for summary judgment (Doc. 32) be **GRANTED**.

3. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Court Order adopting this Report and Recommendation would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 12/9/2020

Karen L. Litkovitz
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JERMEAL WHITE,
    Plaintiff,

vs.

WARDEN R. ERDOS, et al.,
    Defendants.

Case No. 1:19-cv-1009

Barrett, J.
Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).